**NOT FOR PUBLICATION** **CLOSED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JASON WILLIAMS and MALIK HALL, | : : : | |
| Plaintiffs, | : : | |
| v. | : : | CIVIL ACTION NO. 05-5087 (JAP) |
| DEVON BROWN, ET AL., | : : | **OPINION** |
| Defendants. | : : | |

APPEARANCES:

Jason Williams
470321/SBI 767432C
Northern State Prison
168 Frontage Road
Newark, NJ 07114
    Pro Se Plaintiff

Malik Hall
429452SBI233482-C
Northern State Prison
168 Frontage Road
Newark, NJ 07114
    Pro Se Plaintiff

Zulima V. Farber, Esq.
Attorney General of New Jersey
Victoria L. Kuhn, Esq.
Deputy Attorney General
Sarah B. Campbell, Esq.
Deputy Attorney General
R.J. Hughes Justice Complex
25 Market Street
Trenton, New Jersey 08625
    Attorneys for Defendants

PISANO, District Judge.

Plaintiffs, Jason Williams and Malik Hall, proceeding pro se, are inmates incarcerated at Northern State Prison, Newark New Jersey. On October 24, 2005, Plaintiffs filed a complaint pursuant to 42 U.S.C. § 1983 against Devon Brown, former Commissioner of the New Jersey Department of Corrections; Lydell Sherrer, Administrator of Northern State Prison; and Darron Daye, Corrections Sergeant at Northern State Prison. Currently before the Court is Defendants' motion to dismiss or alternatively, motion for summary judgment. Plaintiffs have not opposed this motion. For the following reason, the Court grants Defendants' motion for summary judgment.[1]

## I.   Factual History

Plaintiffs Malik Hall and Jason Williams are cellmates, currently housed in cell 311 of the Delta-300-East Wing in the Security Threat Group Management Unit at Northern State Prison. This unit is the section of administrative segregation which houses inmates who present a security concern based on their history of gang-related violent behavior. Defendants are current and former prison officials.

### A.   Plaintiffs' Allegations

Plaintiffs claim that on November 25, 2004, Hall repeatedly complained to an unnamed corrections officer that he was suffering from asthma attacks. According to Hall, the officer refused to provide him with treatment and instead, locked both Hall and his cellmate, Williams, out of their cell. Thereafter, Plaintiffs claim that a team of officers from the prison's extraction

---

[1] The Court decides this motion without oral argument as permitted by Fed. R. Civ. P. 78.

unit,[2] outfitted in riot gear and led by Sergeant Daye, sprayed Plaintiffs with the natural agent MK9 spray and physically attacked them, resulting in various bodily injuries. Plaintiffs allege that after this incident, the officers refused to provide them with medical treatment for their injuries. They claim that the officers placed them back in their cell, stripped them naked, and forced them to reside together naked in their cell for approximately nine days.[3] Plaintiffs also assert that they were not allowed to leave their cells for a period of time to shower.

Plaintiffs claim that based on the foregoing, Defendants are liable pursuant to 42 U.S.C. § 1983 for their conduct in both their official and individual capacities.[4] Specifically, Plaintiffs assert that (1) Sergeant Daye violated Plaintiffs' Eighth Amendment[5] rights by using excessive force against Plaintiffs and refusing to provide Plaintiffs with adequate medical treatment; and (2) former Commissioner Brown and Administrator Sherrer violated Plaintiffs' constitutional rights by failing to respond to inmate complaints about the use of excessive force by corrections

---

[2] The extraction unit at Northern State Prison forcibly extracts inmates who refuse to lock into their cell from the prison tier and returns them to their cell.

[3] In their complaint, Plaintiffs refer to incidents which allegedly occurred on November 24, 2004 and November 25, 2004. A review of the allegations reveals that as pled, the events which purportedly occurred on November 24, 2004 are nearly identical to the events which purportedly occurred on November 25, 2004. Defendants claim that the incidents of which Plaintiffs complain occurred on November 25, 2004. Accordingly, the Court treats pro se Plaintiffs' allegations as complaints stemming from incidents which occurred on November 25, 2004.

[4] Although Plaintiffs do not specify whether they are suing Defendants in their official or individual capacities, considering Plaintiffs' pro se status, the Court will construe Plaintiffs' lawsuit as one against Defendants in both capacities.

[5] The Eighth Amendment states "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. Amend. VIII. The Eighth Amendment is applicable to the states through the Fourteenth Amendment. See Robinson v. California, 370 U.S. 660, 667 (1962).

officers and failing to properly train and supervise corrections staff.[6] Plaintiffs seek monetary damages as a remedy.[7]

**B.     Defendants' Allegations**

Defendants state that on November 25, 2004, Williams returned from the recreation yard and refused to lock into his cell.  When the cell door was opened to allow Williams to re-enter, Hall exited the cell without permission and also refused to lock into the cell.  Both inmates refused explicit orders from the officers on duty to return to their cell.  Sergeant Daye reported to the scene and again, ordered Plaintiffs to return to their cell.  Plaintiffs refused.  Sergeant Daye then obtained permission from his supervising officers to assemble cell extraction teams to forcibly extract Plaintiffs from the prison tier and return them to their cell.

The facility assembled two cell extraction teams, one for each inmate.  While the teams were being assembled, the duty officers reported to Sergeant Daye that Plaintiffs were "bagged," i.e., that they placed plastic bags over their heads and bodies to prevent contact from the MK9

---

[6] It does not appear that Plaintiffs' allegation that some unnamed corrections officer failed to provide Plaintiff Malik Hall with medical treatment for his asthma, prior to the cell extraction, is a specific cause of action alleged in the complaint.  Instead, it appears that Plaintiffs' make this reference to provide factual background for their version of the incidents of November 25, 2004.  In any event, if such cause of action exists, it is insufficiently specific to establish a violation of 42 U.S.C. § 1983 because Plaintiffs fail to identify the officer who allegedly violated Hall's rights.  See, e.g., Anela v. City of Wildwood, 790 F.2d 1063, 1067-68 (3d Cir. 1986) (affirming trial court's directed verdict in favor of defendants on plaintiffs' section 1983 claim where plaintiff could not identify the specific officers responsible for allegedly violating their rights); Hill v. Algor, 85 F. Supp. 2d 391, 406 (D.N.J. 2000) (granting summary judgment on plaintiff's excessive force claim where plaintiff could not identify officer involved).

[7] Plaintiffs make reference to unspecified "declaratory damages" in their complaint.  However, Plaintiffs fail to ask the Court for any specific type of declaratory relief.  Accordingly, the Court treats Plaintiffs' lawsuit as one for solely monetary damages, including punitive damages.

4

spray.  Sergeant Daye again approached Plaintiffs and asked them to comply with his orders.  Plaintiffs did not comply and instead, repeatedly shouted phrases related to their membership in the Bloods gang.  Sergeant Daye sprayed Plaintiffs.  Thereafter, the extraction teams forcibly subdued Plaintiffs, who physically resisted the officers, by placing them in handcuffs and ankle restraints.

   Subsequent to this incident, the officers took Plaintiffs for medical attention.  The nurses which examined Plaintiffs noted no injuries.  They rinsed Plaintiffs eyes with saline to ease the effects of the spray.  The inmates were then individually showered to remove any residue from the spray.  Williams and Hall were separately returned to their cell and strip-searched.  At that time, Defendants noticed that Hall wrapped sheets around his ankles to prevent the officers from placing him in ankle restraints.  After the respective searches, Williams was restrained with handcuffs and Hall was instructed to kneel and place his hands on his head so the officers could leave the cell.  Once the officers exited the cell, the officers immediately released Williams from his handcuffs through the food port next to the cell door.

   Defendants vehemently deny Plaintiffs' allegations that they were forced to remain naked in their cells for over a week.  Defendants admit that Plaintiffs' clothing was taken from them during their respective strip searches; however, each inmate had a change of clothing in their cell.  Further, Defendants assert that not only were Plaintiffs showered on November 25, 2004, they also were permitted to leave their cells for showers on November 27, 2004, December 2, 2004, and December 4, 2004.  They refused the opportunity to shower on November 30, 2004.

   Defendants submitted a variety of materials in support of their motion.  First, Defendants attached an affidavit of Sergeant Daye attesting to the events of November 25, 2004 as recited

5

above.  Further, Jose Raboy, Senior Investigator with the Special Investigations Division at Northern State Prison, submitted an affidavit stating that he witnessed and was assigned to video record the cell extraction of Hall and Williams on November 25, 2004.  Investigator Raboy confirms Sergeant Daye's account.  Defendants also provided the Court with the videotape which, pursuant to the Court's order, was filed under seal.  The contents of this videotape also substantiates Sergeant's Daye's version of the relevant events.

Further, Defendants attached inmate fact sheets and progress notes for both Hall and Williams, as well as copies of certain pages from the Inmate Handbook and prison shower logs.  The Inmate Handbook supports Sergeant Daye's statement that each inmate had more than one set of clothing in his cell.   The shower log confirms Sergeant Daye's statements about Plaintiffs' showering privileges.

Defendants claim that summary judgment is warranted on Plaintiffs' section 1983 claims because (1) Plaintiffs' claims against Defendants in their official capacities are barred by the Eleventh Amendment; and (2) Plaintiffs' claims against Defendants in their individual capacities must be dismissed because Defendants did not violate Plaintiffs' constitutional rights.

## II.     Standard of Review

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[8]  The

---

[8] The Court treats this motion as a motion for summary judgment pursuant to Fed. R. Civ. P. 56 because it wishes to consider matters outside the pleadings which Defendants' presented to the Court.  See Fed. R. Civ. P. 12(b).  Plaintiffs were on notice that the instant

substantive law identifies which facts are critical or "material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine, fact issue compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party cannot rely on bare assertions or conclusory allegations to support his affirmative claims. See, e.g., Morales v. Busbee, 972 F. Supp. 254, 259 (D.N.J. 1997). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " Matsushita, 475 U.S. at 587 (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

### III.    Legal Discussion

Plaintiffs claim that Defendants violated their rights pursuant to 42 U.S.C. § 1983. To establish a violation of section 1983, Plaintiffs must establish (1) that they were deprived of

---

motion might be adjudicated as a motion for summary judgment because Defendants brought their motion as a "Motion to Dismiss, and, Alternatively, For Summary Judgment." See, e.g., Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996); see also Scott v. Graphic Comm. Int'l Union, Local 97-B, 92 Fed. Appx. 896, 902-03 (3d Cir. 2004) (finding that district court's treatment of motion to dismiss as motion for summary judgment was proper because motion was brought in the alternative and thus, plaintiff was on adequate notice that motion might be considered on summary judgment standard). Accordingly, since the motion was filed over a month ago, Plaintiffs had a reasonable opportunity to present material pertinent to this motion, see Fed. R. Civ. P. 12(b); however, they have failed to submit any response, let alone supplemental materials, in opposition to the motion.

rights, privileges, or immunities secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed under color of state law.[9]  42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); D'Aurizio v. Palisades Park, 963 F.Supp. 378, 383 (D.N.J. 1997).[10]  Accordingly, section 1983 itself is not a source of substantive rights, but provides a vehicle for vindicating the violation of federal rights.  See, e.g., Graham v. Connor, 490 U.S. 386, 393-94 (1989).  A claim pursuant to section 1983 may be brought against a defendant for actions taken in his official capacity or actions taken in his personal or individual capacity. See, e.g., Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).

## A.     Official Capacity Claims

The Eleventh Amendment[11] entitles a State to immunity in federal court from suit by private parties, including its own citizens.  Kentucky, 473 U.S. at 169; A.W. v. Jersey City Public Schools, 341 F.3d 234, 238 (3d Cir. 2003).  This protection from suit extends to state officials sued in their official capacities for monetary damages because a suit for such damages is

---

[9] The "under color of state law" element of section 1983 is similar to the state action requirement of the Fourteenth Amendment in that it excludes merely private conduct from the parameters of section 1983.  See, e.g., Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999).  This element in not in dispute.

[10] Section 1983 states in relevant part: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."  42 U.S.C. § 1983.

[11] The Eleventh Amendment provides: "[t[he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. Amend. XI.

essentially a suit against the state itself.  See, e.g., A.W., 341 F.3d at 238; Kirkland v. Morgievich, No. 04-1651, 2005 WL 3465669, at *2 (D.N.J. 2005).  Accordingly, Plaintiffs' claims against Defendants in their official capacities for monetary damages are barred by the Eleventh Amendment and must be dismissed.

**B.     Individual Capacity Claims**

A state official may be sued for monetary damages in his or her individual capacity.  See Hafer v. Melo, 502 U.S. 21, 25 (1991).  A section 1983 suit against a state official in his or her individual capacity "imposes individual liability upon a government officer for actions taken under color of state law."  Id.; see also Kirkland, 2005 WL 3465669, at *3.  To establish personal or individual liability in a section 1983 action, a plaintiff must show "that the official acting under color of state law caused the deprivation of a federal right."  Graham, 473 U.S. at 166; Hafer, 502 U.S. at 25.

According to Plaintiffs, Sergeant Daye caused the deprivation of Plaintiffs' Eighth Amendment rights by using excessive force against Plaintiffs and failing to provide them with medical treatment.  Further, Plaintiffs assert that former Commissioner Brown and Administrator Sherrer caused the deprivation of Plaintiffs' Eighth Amendment rights by failing to respond to inmate complaints about the officers' excessive use of force and failing to properly train and supervise corrections staff.

**1.     Claims against Sergeant Daye**

Defendants have met their burden to show that no genuine issue of material fact exists which would warrant a trial on Plaintiffs' claims against Sergeant Daye.  First, summary judgment on an excessive force claim is appropriate where "the evidence, viewed in the light

most favorable to the plaintiff, does not support a "reliable inference of wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. 312, 322 (1986); Thomas v. Ferguson, 361 F. Supp. 2d 435, 438 (D.N.J. 2004). The analysis turns on whether the force was applied "in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." Whitley, 475 U.S. at 320; see also Thomas, 361 F. Supp. 2d at 438 (indicating that the "central question" in an excessive force claim is whether force was applied "maliciously and sadistically to cause harm"). Factors a court may consider in evaluating an excessive force claim are: (1) the need for application of the force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the threat to the safety of staff and inmates reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. See Whitley, 475 U.S. at 321; Thomas, 361 F. Supp. 2d at 438.

      Defendants have shown that Sergeant Daye did not use excessive force against Plaintiffs during the November 25, 2004 cell extraction. All of the evidence in the record, including Sergeant Daye's affidavit, Investigator Raboy's affidavit, and the videotape of the events, shows that contrary to Plaintiffs' contentions, on November 25, 2004, Plaintiffs were causing a disturbance on the prison tier by yelling phrases consistent with their ties to the Bloods gang and repeatedly refusing to re-enter their cell despite explicit orders to do so. Sergeant Daye and his extraction teams forcibly placed Plaintiffs back into their cell. The videotape in particular completely contradicts Plaintiffs' version of the events. A review of the videotape reveals that that the force used by Sergeant Daye and the officers under his supervision was not malicious or sadistic, but instead represented a reasonable attempt to restore order in the institution and maintain the safety of corrections staff and the other inmates. Further, from the video, it does not

appear that Plaintiffs (nor any of the officers) were injured during the cell extraction. Plaintiffs have not come forward with facts or other evidence to refute Defendants' submissions. In fact, Plaintiffs did not file any opposition to the instant motion. Accordingly, the Court finds that no rational trier of fact could find in Plaintiffs' favor and thus, dismisses Plaintiffs' excessive force claim against Sergeant Daye.

Furthermore, Plaintiffs' claims that Sergeant Daye failed to provide them with medical treatment, failed to provide them with clothing after the strip-search, and did not allow them to shower must also be dismissed. The prohibition of "cruel and unusual punishment under the Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement and basic medical treatment to those incarcerated. See, e.g., Farmer v. Brennan, 511 U.S. 825, 832 (1994) (stating that the Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care); Anderson v. Bureau of Prisons, No. 05-4560, 2006 WL 929373, at *1 (3d Cir. Apr. 11, 2006) (stating that the Eighth Amendment "requires prison officials to provide basic medical treatment to those incarcerated"). To establish such a claim, an inmate must show that prison officials were "deliberately indifferent" to the inmate's inhumane confinement conditions or serious medical needs. See, e.g., Farmer, 511 U.S. at 837 ("a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety"); Anderson, 2006 WL 929373, at *1 ("To establish a medical claim based on the Eighth Amendment, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need.").

The record in this case clearly does not reveal the type of "deliberate indifference" required to establish an Eighth Amendment violation. The videotape of the cell extraction shows that nurses examined Plaintiffs immediately after the cell extraction and specifically, washed their eyes with saline to combat the effects of the MK9 spray. From the videotape, Plaintiffs did not appear to have any injuries at all, let alone any serious injuries that would require more immediate medical assistance. Further, Plaintiffs were not only showered immediately after the cell extraction to remove residue from the spray, but the prison shower log indicates that they were permitted to and did in fact take several showers in the days following the incident. Plaintiffs' contention that they were forced to remain naked in their cell for nine days is also without merit as the record indicates that they were in possession of alternate clothing in their cell. Again, Plaintiffs offer no evidence to dispute Defendants' assertions. Thus, the Court finds that no rational trier of fact could find in Plaintiffs' favor and accordingly, such claims are dismissed.

### 2.  Claims against Former Commissioner Brown and Administrator Sherrer

The Court also grants Defendants' motion for summary judgment on Plaintiffs' claims against former Commissioner Brown and Administrator Sherrer. Plaintiffs claim that these Defendants violated their constitutional rights by failing to respond to inmate complaints about excessive force and failing to adequately train and supervise corrections officers. These complaints amount to an allegation that Defendants Brown and Sherrer violated Plaintiffs' Eighth Amendment rights by "failing to take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (stating that the Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee inmates' safety). To

establish such a failure to protect claim under the Eighth Amendment, Plaintiffs must show that (1) they were incarcerated under conditions posing a substantial risk of serious harm; and (2) the defendant prison official acted with deliberate indifference.  Farmer, 511 U.S. at 834-37.

As discussed above, Defendants have shown that Sergeant Daye did not use excessive force against Plaintiffs on November 25, 2004.  Plaintiffs additionally provide no factual basis to support any claim for excessive force at any other time by any other corrections officer.  Accordingly, no condition was present in the facility which posed a substantial risk of serious harm to Plaintiffs.  Further, to the extent that any such condition existed, there is no evidence that former Commissioner Brown and Administrator Sherrer were aware of such problems and deliberately disregarded the risks to Plaintiffs' safety.  Thus, Plaintiffs' claims against former Commissioner Brown and Administrator Sherrer are dismissed.

**IV.     Conclusion**

In conclusion, for the reasons stated above, the Court grants Defendants' motion for summary judgment.  Plaintiffs' complaint is dismissed and this matter is hereby closed.  An appropriate order accompanies this opinion.

Date:   June 21, 2006

/s/ JOEL A. PISANO
United States District Judge

Original:   Clerk
cc:         Judge Arleo
            All parties
            File